**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: March 26 2013

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. **12-32287** |
| | ) | |
| **Stephen Copeland** | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER

This matter comes before the Court upon the Motion of the United States Trustee to Dismiss for Abuse Pursuant to 11 U.S.C. § 707(b)(1), (b)(2), & (b)(3), ("Motion to Dismiss") [Doc.# 18]. Hearings were held on November 14, 2012 and December 5, 2012, at which counsel for the Debtor and counsel for the United States Trustee ("UST") attended in person and at which the parties had the opportunity to present testimony and evidence in support of their positions.

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northen District of Ohio. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(A).

Having considered the arguments of counsel as well as testimony and evidence offered by the parties, for the reasons that follow, the court will grant the UST's motion and dismiss Debtor's Chapter 7 case unless he converts the case to Chapter 13.

## BACKGROUND

On May 14, 2012, Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code, stating that his debts are primarily consumer debts. Debtor has scheduled $271,439.87 of unsecured nonpriority debt, much of which has been incurred since his wife's death in 2006. Debtor's personal property has a total value of $16,522 and includes one vehicle, a 1978 Ford Futura, which he owns free and clear of liens. [*See* UST Ex. B, pp. 10 & 12].

Debtor is sixty years old. He is single with no dependents and is employed by Chrysler Group LLC ("Chrysler"), but is not currently working due to retooling and changeover. Debtor was laid off from his position at Chrysler after he filed his petition for relief. Although Debtor is not actively working, he receives income classified as "sub pay" in addition to monthly Social Security payments. Debtor anticipates returning to full employment once Chrysler finishes the retooling and changeover process.

As required under the Bankruptcy Prevention Abuse and Consumer Protection Act of 2005 ("BAPCPA"), Debtor completed and filed Official Form B22A, Statement of Current Monthly Income and Means Test Calculation. *See* 11 U.S.C. § 707(b)(2)(C). Debtor reports total current monthly income ("CMI"), as that term is defined in 11 U.S.C. § 101(10A), in the amount of $4,642.00. [UST Ex. C, p. 3]. Included in his CMI calculation are wages in the amount of $4,300.00 and Social Security benefits in the amount of $342.00. [*Id.* at 2]. On an annualized basis, Debtor's reported CMI is $55,704.00, which is above the annual median family income for a family of one in Ohio.

Debtor's means test calculation includes deductions totaling $4,573.67. [*Id.* at 6]. His total deductions include deductions on line 22A for a vehicle operation/public transportation expense in the amount of $212.00, on line 22B for additional public transportation expenses in the amount of $182.00, on line 23 for a vehicle ownership/lease expense in the amount of $517.00, and on line 25 for a tax expense in the amount of $1,364.00. [*Id.* at 4]. Debtor's deductions do not include a deduction on line 45 for Chapter 13 administrative expenses. In light of Debtor's calculations, he reports monthly disposable income in the amount of $68.33 on line 50 of his means test form. He therefore indicates that a presumption of abuse does not arise.

The UST disagrees and argues that Debtor's means test contains several material errors. In support of his position, the UST offers the testimony of bankruptcy analyst Catherine Lowman. Lowman testified that based upon Debtor's pay advices received in December 2011, which show total gross wages in the amount of $4,618.43, [UST Ex. E, pp 1-5], and his pay advice dated April 27, 2012, which shows year-to-date income of $22,228.22, [*Id.* at 12], Debtor's total income during the five month period ending the month

2

12-32287-maw    Doc 38    FILED 03/26/13    ENTERED 03/26/13 15:32:01    Page 2 of 7

before he filed his bankruptcy petition was $26,846.65, or a monthly average of $5,369.00, significantly higher than reported on Debtor's means test. Lowman testified that the UST could not calculate Debtor's CMI based on income received during the six month interval before filing as Debtor did not provide pay advices for November 2011 despite requests for them by the UST.

The UST also asserts that Debtor is not entitled to deductions for public transportation and vehicle ownership/lease expenses on lines 22B and 23 but that Debtor is entitled to an additional $200 vehicle operation expense on line 22A due to the age and mileage of his vehicle. In addition, after evaluating and reviewing Debtor's most recent state and federal income tax returns, Lowman testified that Debtor is entitled to an additional $174.00 tax expense deduction on line 25, for a total tax expense deduction in the amount of $1,538.00. Lowman also calculates $74.68 as a proper Chapter 13 administrative expense deduction on line 45 of Form B22A. According to the UST, if properly calculated with these modifications, the means test shows that there is a presumption of abuse in this case.

Although the UST also argues under § 707(b)(3) that the totality of the circumstances of Debtor's financial situation demonstrates abuse, because the court agrees that a presumption of abuse arises in this case, it does not address the § 707(b)(3) argument.

## LAW AND ANALYSIS

"Although very detailed in its operation, the 'means test' formula of § 707(b)(2) is conceptually simple." *In re Burggraf*, 436 B.R. 466, 470 (Bankr. N.D. Ohio 2010). Section 707(b)(1) states in part;

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee. . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

Section 707(b)(2) provides, in relevant part, as follows:

> [T]he court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of –
>     (I) 25 percent of the debtors nonpriority unsecured claims in the case, or $7,025 whichever is greater; or
>     (II) $11,725.[1]

---

[1] These are the dollar amounts in effect as of April 1, 2010, as adjusted under § 104 of the Bankruptcy Code. 11 U.S.C. § 104(a), (b). Effective April 1, 2013, these numbers will readjust under § 104. Even though this case may still be pending at that date, the adjusted numbers in effect on April 1, 2013, will not apply to cases like this one filed before April 1, 2013. 11 U.S.C. § 104(c).

3

11 U.S.C. § 707(b)(2)(A)(i). Current monthly income ("CMI") is defined as "the average monthly income from all sources that the debtor receives. . .without regard to whether such income is taxable income, derived during the 6-month period ending on the last day of the calender month immediately preceding the date of the commencement of the case. . . ." 11 U.S.C. § 101(10A)(A). Specifically excluded from CMI are benefits received under the Social Security Act. 11 U.S.C. § 101(10A)(B).

In this case, the UST calculates Debtor's CMI at $5,369 rather than the $4,642 reported on Debtor's Form B22A. Although the UST's calculation is based on only five months of the relevant six-month period under § 101(10A)(A), the calculation accurately represents the average monthly income during that five-month period. Debtor was not laid off from Chrysler until after he filed his bankruptcy petition, yet he failed to provide the UST with any pay advices for the month of November 2011 despite requests for the information. The UST's calculation also properly omits the Social Security benefits received by Debtor pursuant to the Social Security Act. The court finds that the UST's calculation more accurately represents Debtor's CMI as defined by the statute.

Section 707(b)(2)(A)(ii) sets forth permissible deductions from CMI and provides in relevant part that "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards" issued by the Internal Revenue Service. In interpreting the National and Local Standards, courts may consult the Internal Revenue Service's explanatory guidelines found in the Collection Financial Standards of the Internal Revenue Manual. *Ransom v. FIA Card Servs., N.A.*, 131 S. Ct. 716, 726 (2011).

The court credits Lowman's testimony that due to the age and mileage of Debtor's only vehicle, Debtor is entitled to an additional $200.00 vehicle operation expense on line 22A of Form B22A. But the court also agrees with the UST's assertion that Debtor's deductions for additional public transportation expenses on line 22B and transportation ownership/lease expenses on line 23 are not proper deductions. While both vehicle operation expenses and public transportation expenses may be deducted if a debtor owns a vehicle and uses public transportation, the expenses allowed to be deducted in such cases are limited to actual expenses incurred that are necessary for the health and welfare of the debtor or his family or for the production of income. *See* Internal Revenue Manual, 5:15.1.9, ¶ 1(B) (Financial Analysis Handbook, "Local Standards"). [2] Debtor testified that his Schedule J expenses, which include a transportation expense of only $200.00, are accurate. The court thus concludes that Debtor is not entitled to an additional $182.00

---

[2] The Financial Analysis Handbook is found at http://www.irs.gov/irm/part5/irm_05-015-001.html.

deduction for public transportation expenses in addition to a $412.00 vehicle operation/public transportation expense deduction that he is entitled to on line 22A.

Additionally, as Debtor owns his vehicle free and clear, he is not entitled to the $517.00 ownership expense deduction shown on line 23 of his Form B22A. The deduction on line 23 for ownership/lease expense includes only a deduction for loan or lease payment expenses and is not relevant to Debtor as he does not incur any such expenses. *See Ransom,* 131 S.Ct. at 725; Internal Revenue Manual,5:15.1.9, ¶ 1(B)(Financial Analysis Handbook, "Local Standards").

The court also credits Lowman's testimony that Debtor is entitled to deduct a tax expense (line 25) of $1,538, which is an increase of $174 over the amount included in Debtor's means test calculation. And, although Debtor does not include a deduction for Chapter 13 administrative expenses (line 45), the court credits Lowman's calculation of such expense at $74.68.

The court finds that the $4,573.67 total of all deductions Debtor included on line 47 of his original means test form, [UST Ex. C], needs to be reduced by the net amount of $250.32 (+$200.00, - $182.00, - $517.00, +$174.00, +$74.68= negative $250.32). This makes the corrected total allowed deductions on line 47 the amount of $4,323.35 and not the $4,573.67 advanced by Debtor.

Adding the additional $727 of monthly income to CMI reported on Debtor's Form B22A, for a total of $5,369, and subtracting therefrom the $4,323.35 of adjusted permitted deductions from CMI as discussed above, results in a corrected monthly disposable income of $1,045.65 from line 50 of Debtor's original mean test form. Over a sixty month period, the corrected monthly disposable income on line 51 of Debtor's original mean test form is $62,739. If the $62,739 amount determined by this calculation is not less than the lesser of the alternative standards set forth in subparts (I) and (II) of § 707(b)(2)(A)(i), then a presumption of abuse arises.

Under subpart (I), the applicable number is the greater of either 25% of a debtor's non-priority unsecured claims, which in this case is 25% X $271,429.87, or $67,857.97, and $7,025. The greater of the two numbers under subpart (I) for application in this case is the $67,857.97 amount. The statutory amount of $11,725 in subpart (II) is thus the lesser of $67,857.97 calculated under subpart (I) and $11,725 in subpart (II). In turn the $62,739 calculated by the court under the UST's revised means test is not less than the $11,725 amount in subpart (II). The court therefore finds that a presumption of abuse arises in this case under § 707(b)(2)(A)(i).

Nevertheless, the presumption of abuse can be rebutted "by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such

special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. §707(b)(2)(B)(i). The Bankruptcy Code does not specifically define what constitutes a "special circumstance." While the two examples are not the only circumstances that may rebut a presumption of abuse, courts usually require the special circumstance "to be similar in nature and have characteristics similar to the examples provided in § 707(b)(2)(B)(i). *Burggraf*, 436 B.R. at 471. A "special circumstance" must affect a debtor's ability to repay because there are 'additional expenses' or a reduction in CMI, and there must be no reasonable alternative available to the debtor to avoid such extra expense or reduction in income." *In re Lightsey*, 374 B.R. 377, 383 (Bankr. S.D. Ga. 2007). "In the end, however, any inquiry concerning the existence of 'special circumstances' is ultimately dependent on the particular facts of each debtor's situation, and thus must be conducted on a case-by-case basis." *Burggraf*, 436 at 472.

Debtor argues that a special circumstance exists in light of his post-petition unemployment and resulting decrease in income as a result thereof. Although most of the case law regarding special circumstances involves increased expenses rather than a reduction in income, at least one court in the Sixth Circuit has found that a reduction of income due to forced retirement qualifies as a special circumstance. *See In re Heath*, 371 B.R. 806 (Bankr. E.D. Mich. 2007). The debtor in *Heath*, a 51-year-old Ford Motor Company employee with carpal tunnel syndrome, was provided the option to retire early with a buyout or risk being laid off. *Id.* at 808. The debtor decided to take the buyout which provided her with a monthly income of $2,124.77 (approximately 45% of her previous monthly income). *Id.* The court found that this change in income constituted a special circumstance that allowed the debtor to adjust her CMI. *Id.* at 813. The court based its decision on the facts that the debtor was older, had worked at relatively unskilled labor her entire life, and had worked with material physical restrictions, all factors that indicated that the debtor's decreased income was a permanent reduction in income due to the likely difficulty for her to obtain similar new employment. *Id.* at 813.

Like the debtor in *Heath*, Debtor's post-petition unemployment and income reduction arose from circumstances beyond his control. But the court otherwise finds Debtor's circumstances persuasively distinguishable from those in *Heath.* Unlike the debtor in *Heath,* Debtor's unemployment and, thus, his decreased income, is temporary. Even in the depths of Debtor's despair and depression after the death of his wife, with its attendant impacts on his financial well-being thereafter spiraling out of control, Debtor managed to go to work (but little else) when his job was available. According to Debtor, he anticipates returning to work at Chrysler in April or May of this year when retooling is completed for the new vehicle

line. Debtor also anticipates overtime being available when he returns to work. Given the temporary nature of Debtor's unemployment, the court finds that Debtor's reduction in income does not constitute a special circumstance under 11 U.S.C. §707(b)(2)(B)(i).

**THEREFORE,** for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Debtor is allowed ten (10) days from the date of this order to file a motion to convert to a Chapter 13 case, absent which the United States Trustee's motion to dismiss [Doc. # 18] will be granted, and this case will be dismissed by separate order of the court.

###